UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE | Bankruptcy Case No. 15-60090-fra7 |
| TYLER EUGENE WESTBY, | |
| Debtor. | |
| JEANNE E. HUFFMAN, Trustee, | Adversary Proceeding No. 16-6018-fra |
| Plaintiff, | |
| v. | |
| DAVID GOLLERSRUD, | MEMORANDUM OPINION |
| Defendant. | |

This matter comes before the Court on Plaintiff's Complaint to determine the secured status of a proof of claim filed by Defendant. The matter was tried and is now ripe for decision.

**Procedural Background:**

Debtor herein, Tyler Westby (**Westby**), filed a Chapter 7 petition on January 14, 2015. At the time, Westby owned real property at 2728 Upper Breckenridge Loop NW in Salem, Oregon (**the Property**). The Property is located in Polk County. Upon the Chapter 7 petition filing, the Property became an asset of the Chapter 7 estate.

// // //

MEMORANDUM OPINION-1

Plaintiff is the Chapter 7 Trustee. She is administering the Chapter 7 as an "asset" case. Defendant is a pre-petition creditor. He has filed a proof of claim, and has since amended the claim three (3) times. The most recent claim asserts that as of the Chapter 7 petition's filing, Defendant was owed $103,749.99, secured by the Property. Plaintiff disputes Defendant's secured status, arguing instead that Defendant should be treated as a general unsecured creditor.

During the pendency of the Chapter 7 case, Plaintiff and Westby entered into a court-approved settlement agreement, whereby in return for $175,000, Plaintiff released her interest in certain estate assets, including the Property. In the course of those proceedings, the present parties agreed that any lien or security interest Defendant had in the Property would attach to the settlement proceeds, which are being held in Plaintiff's counsel's trust account pending further court order.[1]

**Facts**:

Prior to his petition Westby was a real estate investor and speculator. To fund his investments, he sought out "investors" – actually lenders – whose loans he promised to secure by "assignment" of his interests in notes and trust deeds which he obtained in connection with the sale of real property to third parties. Defendant was one such lender.

In and around August 2007, Westby sold the Property to Tony and Rosalinda Swanson and took back a note (**Swanson Note**) and trust deed (**Swanson Trust Deed**).

In April 2008, Defendant loaned Westby $100,000. Westby executed a promissory note for $100,000, payable at 10% interest, in monthly interest-only payments, with the balance due on April 9, 2009 (**Westby Note #1**). On July 7, 2008, Westby assigned his interest in the Swanson Note and Swanson Trust Deed to himself and Defendant (**Assignment #1**) as security for Westby Note #1.

---

[1]In a separate adversary proceeding (Adv. Proc. No. 15-6081-fra), a stipulated judgment in Defendant's favor was entered against Westby for $189,000, plus 10% interest thereon from January 15, 2015, and declaring the money judgment excepted from Westby's discharge. The Stipulated Judgment subsumes the amount claimed in Defendant's most recent amended proof of claim. In a prior ruling on Plaintiff's motion for summary judgment in this proceeding, this Court held the stipulated judgment did not represent an election of remedies so as to bar Defendant's asserted secured claim against the Chapter 7 estate.

MEMORANDUM OPINION-2

Westby did not perform under Westby Note #1. Instead, on April 9, 2009, he executed another note (**Westby Note #2**) which superseded Westby Note #1. It had identical terms as its predecessor except the due date was one year later, i.e., April 9, 2010. The parties intended Assignment #1 to secure Westby Note #2.

At some point the Swansons defaulted on the Swanson Note, and Westby obtained the Property back in his name. In early 2010, Westby began negotiating to sell the Property to Cheryl Guenther (**Guenther**). To facilitate the sale, Defendant agreed to release any assigned interest he had in the Swanson Trust Deed. As the vehicle to do so, Defendant and Westby chose a "bargain and sale" deed to the Property, executed on February 8, 2010, and recorded on February 10, 2010. At the time, Westby and Defendant understood that as replacement security, Westby would execute an assignment of the note and trust deed he was to take from Guenther.

In early 2010, Westby sold the Property to Guenther for $267,500. As consideration, he received $10,000 in cash plus a $257,500 note dated February 17, 2010, payable at 6% interest, in monthly installments with a balloon payment due on May 15, 2012 (**Guenther Note**). He also received a trust deed of even date (**Guenther Trust Deed**), giving Westby, his successors, and assigns a lien on the Property to secure the sums due under the Guenther Note. The sale closed on March 3, 2010. On that date a statutory warranty deed to the Property (transferring it from Westby to Guenther), as well as the Guenther Trust Deed, were recorded in the Polk County real property records.

On March 29, 2010, Westby executed an assignment with the same boilerplate language as Assignment #1, whereby he assigned to himself and Defendant the Guenther Note and the beneficial interest in the Guenther Trust Deed (**Assignment #2**).[2] Assignment #2 was recorded in the Polk County real property records on April 5, 2010. Neither Westby nor Defendant told Guenther of Assignment #2.

According to the testimony, although Assignment #2's language is absolute, like Assignment #1, the parties' intent was to create a security interest to secure Westby Note #2. Westby testified that the

---

[2] The assignment was from Westby to "Tyler Westby and David Gollersrud," effectively creating a tenancy in common as to the Note and beneficiary's interest under the deed of trust.

MEMORANDUM OPINION-3

assignment was executed jointly to him and Defendant because he wanted to retain his interest in the Guenther Note and Trust Deed because (presumably) there was value in the Guenther Note and the Property above what he owed to Defendant.[3] Both Westby and Defendant testified that Assignment #2 was the only evidence of any security agreement or consensual lien between them.[4] Defendant did not file a financing statement with the Oregon Secretary of State indicating his security interest in the Guenther Note and Guenther Trust Deed or take those items into his possession.

Westby did not timely pay Westby Note #2, which came due in April 2010. Instead, Defendant verbally agreed to extend the due date until the Property sold while accepting interest-only monthly payments in the interim.

Guenther did not timely pay Westby the Guenther Note which came due in May 2012. Instead, at some point in early 2014, she and Westby agreed she would transfer the Property back to him in satisfaction of her obligation. On or about April 22, 2014, Guenther executed a quitclaim deed of the Property to Westby (**Quitclaim Deed**). The stated consideration was $257,500, the Guenther Note's principal balance. The Quitclaim Deed was recorded on April 25, 2014. Defendant had no knowledge of Westby and Guenther's arrangement. However, at trial he conceded the Quitclaim Deed satisfied Guenther's personal obligation to both him and Westby under the Guenther Note.

Westby made interest-only payments on Westby Note #2 through August 2014, with no payments thereafter.

// // //

// // //

// // //

---

[3]That Assignment #2 was intended for security purposes is confirmed by Defendant's Amended Proof of Claim 3-4 which relies solely on Westby Note #2 as the basis for the amount claimed.

[4]Both Westby and Defendant testified that by Assignment #2, Westby had transferred a "trust deed" in the Property. However, as Westby was then out of title, he could not have given a consensual lien on the Property itself. Rather, the testimony must be construed as the parties' understanding that the "trust deed" secured the Guenther Note which was the main collateral/security for Westby Note #2.

MEMORANDUM OPINION-4

**Discussion**:

Oregon's Version of Uniform Commercial Code (**UCC**) Article 9 Applies:

Defendant claims that his right to repayment of the loan is secured by the Property itself. However, as discussed in more detail below, the actual security was the Guenther Note which in turn was secured by the Guenther Trust Deed. The Guenther Note was a "promissory note," ORS 79.0102(1)(LLL), which is an "instrument," ORS 79.0102(1)(tt)(A), which in turn is a form of personal property. Therefore, UCC Article 9 applies. ORS 79.0109(1)(a). It does not matter that the Guenther Trust Deed secures the Guenther Note: Although UCC Article 9 does not apply to transfers of interests in or liens on real property, ORS 79.0109(4)(k), its application to a security interest in a secured obligation "is not affected by the fact that the obligation is itself secured by a transaction or interest to which . . . [Article 9] does not apply." ORS 79.0109(2).[5]

---

[5]As Official Comment #7 to ORS 79.0109(2) explains:

> 7. Security Interest in Obligation Secured by Non-Article 9 Transaction. Subsection (b) is unchanged in substance from former Section 9-102(3). The following example provides an illustration.
>
> Example 1: O borrows $10,000 from M and secures its repayment obligation, evidenced by a promissory note, by granting to M a mortgage on O's land. This Article does not apply to the creation of the real-property mortgage. However, *if M sells the promissory note to X or gives a security interest in the note to secure M's own obligation to X, this Article applies to the security interest thereby created in favor of X. The security interest in the promissory note is covered by this Article even though the note is secured by a real-property mortgage.* Also, X's security interest in the note gives X an attached security interest in the mortgage lien that secures the note and, if the security interest in the note is perfected, the security interest in the mortgage lien likewise is perfected. See Sections 9-203, 9-308.
>
> *It also follows from subsection (b) that an attempt to obtain or perfect a security interest in a secured obligation by complying with non-Article 9 law, as by an assignment of record of a real-property mortgage, would be ineffective*. Finally, it is implicit from subsection (b) that one cannot obtain a

(continued...)

MEMORANDUM OPINION-5

Assignment #2 is a Security Agreement:

Although absolute on its face Assignment #2 was not a "sale" of the Guenther Note and beneficial interest in the Guenther Trust Deed, but rather only a transfer of a security interest in rights thereunder. ORS 79.0102(2) incorporates ORS 72.1060 which provides that "[a] 'sale' consists in the passing of title from the seller to the buyer for a price." Westby and Defendant both testified that Assignment #2 did not pass title to either the Guenther Note or Guenther Trust Deed. Rather, the parties' intent was to secure Westby Note #2. Those intentions control. Getsey v. Eiler (In re Cohen), 305 B.R. 886, 901 (9th Cir. BAP 2004) ("intent of the parties governs whether a transaction constitutes an assignment that transfers ownership or, instead, creates a security interest").[6]

Plaintiff argues Assignment #2 is an insufficient writing to constitute an enforceable security agreement. The Court rejects this "statute of frauds" defense. A security agreement attaches to collateral when it becomes enforceable against the debtor. ORS 79.0203(1). It becomes enforceable against the debtor and third parties when value has been given, the debtor has rights in the collateral, and the debtor has "authenticated" (which includes signing, ORS 79.0102(1)(g)(A)), a security agreement that "provides a description of the collateral." ORS 79.0203(2)(a)-(c). Here, Westby signed Assignment #2, it describes the

---

[5](...continued)
    security interest in a lien, such as a mortgage on real property, *that is not also coupled with an equally effective security interest in the secured obligation.* This Article rejects cases such as *In re Maryville Savings & Loan Corp.*, 743 F.2d 413 (6th Cir.1984), clarified on reconsideration, 760 F.2d 119 (1985) [first and second emphases added].

[6]Westby and Defendant's course of dealing confirms their intent. They had previously entered into an identical security arrangement with regard to the Swanson Note and Swanson Trust Deed by virtue of Assignment #1. See ORS 71.2010(2)(c) (defining "agreement" as the "the bargain of the parties in fact as found in their language or inferred from other circumstances including . . . course of dealing" ); ORS 71.3030(2) (defining "course of dealing" as a "sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting the parties' expressions and other conduct").

MEMORANDUM OPINION-6

collateral (i.e., the Guenther Note and Guenther Trust Deed), and there is no dispute Defendant gave value. It need not have described the debt which it secured (i.e., Westby Note #2). Rather, that information was provided by parole evidence. Indeed it would be counterintuitive to hold a transfer of property absolute on its face could not evidence the transfer of a lesser interest, such as a lien or security interest, in that property.[7]

What is not altogether clear is how much of the Guenther Note and Guenther Trust Deed was given as security. Assignment #2 was executed simply to "Tyler Westby and David Gollersrud [Defendant]." It does not indicate the percentage of ownership of those instruments granted as security. Thus the question arises what percentage the parties intended. The Court need not answer that question because, as explained below, Plaintiff may avoid whatever security interest Defendant received.

<u>Defendant's Security Interest Survived the Quitclaim Deed</u>:

Defendant conceded the Quitclaim Deed "satisfied" the Guenther Note. However, he also argued that despite such satisfaction, there remained an "in rem" claim against the Property. These two positions are reconcilable when the Quitclaim Deed is viewed as a deed in lieu of foreclosure with preservation (non-merger) of the Guenther Note and Guenther Trust Deed as to collection against the Property only, with Guenther's personal liability being released. This is consistent with Westby's testimony that he did not intend to prejudice Defendant's rights by accepting the Quitclaim Deed and with Defendant's testimony that he thought he could collect through the Property. <u>Baxter v. Redevco, Inc.</u>, 279 Or. 117, 122-123, 566 P.2d 501, 503-504 (1977) (parties' intentions control as to whether or not merger occurs); <u>Besser v. Hawthorn</u>, 3 Or. 129, 136-137 (1869) (intention of mortgagee/grantee controls whether or not an equitable interest is merged into the fee); <u>Or. & W. Trust Inv. Co. v. Shaw</u>, 6 Sawy. 52, 18 F. Cas. 770, No. 10,557 (C.C.D. Or. 1879) (when a mortgagee assigns note and mortgage securing it to a third party prior to the mortgagee obtaining the fee back from the mortgagor, he manifests intention to keep the mortgage and fee separate).

Even if the parties' intentions were not manifest, non-merger will be presumed according to the mortgagee/grantee's interests, or if appropriate to protect the intervening rights of a third party with a

---

[7] <u>See</u> also ORS 79.0109(1)(a) (Article 9 applies to "[a] transaction, <u>regardless of its form</u>, that creates a security interest in personal property") [emphasis added].

MEMORANDUM OPINION-7

superior interest, as here, or protect against the intervening rights of a third party with a junior interest/lien. See Barber v. Hartley, 136 Or. 210, 220-222, 298 P. 226, 230-231 (1931). Under the above precepts, the Guenther Note and Guenther Trust Deed did not merge into the fee, and Defendant's security interest therein survived as it pertains to ultimate recovery from the Property.[8]

<u>Defendant's Security Interest was Unperfected and Avoidable</u>

There are only two ways to perfect a security interest in a promissory note, one by filing a financing statement, ORS 79.0312(1), the other by taking possession of the note. ORS 79.0313(1). Defendant did neither.[9] His security interest in the Guenther Note and Guenther Trust Deed was thus unperfected.

The Bankruptcy Code gives Plaintiff, as trustee, the rights of a creditor with a "judicial lien"[10] as of the commencement of the bankruptcy case. 11 U.S.C. § 544(a)(1). Article 9 recognizes this status by including "[a] trustee in bankruptcy" in the definition of "lien creditor." ORS 79.0102(1)(yy)(C). Under Article 9, a lien creditor's interest is superior to that of creditor with an unperfected security interest. ORS 79.0317(1)(b)(A). This is true in the case at bar even if Assignment #2's recordation in the Polk County real property records gave constructive notice of Defendant's security interest, because notice in that manner is

---

[8]There is no dispute that once Westby missed an interest-only payment to Defendant, he became in default. Further, there is no dispute Guenther was long in default on her obligations to Westby. Thus to satisfy Westby Note #2, Defendant, <u>outside of bankruptcy</u>, could have enforced Guenther's obligations to Westby and exercised Westby's rights as to the Property under the Guenther Note and Trust Deed without first taking the additional step of becoming their "owner" by sale (and credit bid) or strict foreclosure. ORS 79.0607(1)(c) (upon default, a secured party may enforce the obligations of any person obligated on collateral and may exercise the rights of the debtor with respect to any property that secures the obligations of the person obligated on the collateral).

[9]To the extent Defendant is deemed to have given "new value" by his Bargain and Sale Deed to Westby releasing his security interest in the Swanson Note and Swanson Trust Deed, <u>see</u> ORS 79.0102(1)(ddd)(A)(iii) (defining "new value" in relevant part as a "[r]elease by a transferee of an interest in property previously transferred to the transferee"), his security interest in the Guenther Note and Guenther Trust Deed was automatically perfected for twenty (20) days from the time it attached, ORS 79.0312(5), which as is evident, lapsed long before Westby filed bankruptcy.

[10]"Lien" means "charge against or interest in property to secure payment of a debt or performance of an obligation." § 101(37). "Judicial lien" means "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." § 101(36).

MEMORANDUM OPINION-8

irrelevant under ORS 79.0317(1)(b)(A). Roost v. Newport (In re So. Or. Mortg., Inc.), 125 B.R. 625, 628-629 (Bankr. D. Or. 1991) (construing ORS 79.0317(1)(b)(A)'s predecessor, ORS 79.3010(1),(4)).[11] Defendant's security interest in the Guenther Note and Guenther Trust Deed is thus avoidable.

<u>Defendant is Not Entitled to an Equitable Lien</u>:

Defendant argued that he is entitled to an equitable lien in the Property with priority over any rights Plaintiff may have. As a threshold issue, neither Defendant's proofs of claim nor his counterclaim and affirmative defenses assert such rights. Moreover, he did not argue entitlement to an equitable lien at trial or otherwise ask the Court to conform the pleadings to the proof under FRCP 15(b)(2) (made applicable by FRBP 7015). See also Ionian Corp. v. Country Mut. Ins. Corp., 2015 WL 4464138, *3 (D. Or. July 21, 2015) (Oregon law does not recognize a claim for an "equitable lien" per se; imposition of such a lien is merely one remedy for a claim based on unjust enrichment). Instead, his first and only argument on the subject was made in a pre-trial memorandum. See Supplemental Trial Memorandum (Doc. #30) at 5:5-6:2. Thus, it is highly questionable equitable lien rights are before the Court. Even assuming arguendo they are, Defendant is not entitled to any such lien.

Under Oregon law, an equitable lien may be imposed to prevent unjust enrichment. Marriage of Bull, 48 Or. App. 565, 568, 617 P.2d 317, 318 (1980); Ionian Corp., 2015 WL 4464138, at *3. Defendant argues entitlement to this remedy "[i]n the event this Court should find that somehow the beneficial interest of this creditor is avoided or satisfied <u>because debtor [Westby] took the realty as payment</u>." Defendant's Supplemental Trial Memorandum at 5:14-15 [emphasis added]. As discussed, the Court has construed the Quitclaim Deed as a non-merger deed in lieu of foreclosure, which ultimately preserved Defendant's security interest in the Guenther Note and Guenther Trust Deed. Defendant's interest was thus not "avoided or satisfied" by delivery of the Quitclaim Deed. Rather, it is avoidable because Defendant failed to properly perfect that interest and Westby's bankruptcy intervened. As Defendant apparently acknowledges, equity

---

[11]Because neither party argues it, the Court will not address whether, and if so, the implications of a finding, that by virtue of the Quitclaim Deed, the Property itself became a "proceed" of the Guenther Note and Guenther Trust Deed.

MEMORANDUM OPINION-9

should normally not step in when an extant, executed contractual relationship defines the parties' rights. Cf. Or. Mut. Ins. v. Cornelison, 214 Or. 501, 512, 330 P.2d 161, 166 (1958) (an equitable lien will not be implied where the parties themselves have stipulated for a purely legal liability; such a lien is not grounded upon a supposed advantage which either of the contracting parties has lost by his mere inadvertence).[12]

**Conclusion:**

Because Defendant did not perfect his security interest, Plaintiff's rights as hypothetical lien creditor take priority. A judgment should be entered:

    1) avoiding:

        a) Defendant's security interest in the Guenther Note and Guenther Trust Deed,
        b) any lien or security interest in the Property; and
        c) any lien or security interest in the settlement proceeds;

    2) preserving under 11 U.S.C. § 551, any avoided lien or security interest for the benefit of the Chapter 7 estate;

    3) releasing the settlement proceeds from Plaintiff's counsel's trust account;

    4) allowing Defendant's Amended Proof of Claim #3-4 as a general unsecured claim in the amount of $103,749.99; and

    5) awarding Plaintiff her reasonable costs and disbursements under FRBP 7054(b)(1), to be determined in supplemental proceedings under LBRs 7054-1 and 9021-1(d).

Within fourteen (14) days of this Opinion's entry, Plaintiff, after circulation, is to tender a judgment[13]

---

[12] In so holding, the Court need not address Defendant's equitable lien rights vis-a-vis Plaintiff's strong-arm rights under 11 U.S.C. § 544(a).

[13] The judgment will be considered a "final" judgment. This proceeding involves the allowance or disallowance of a secured claim against the estate, as well as a determination of the validity of a lien asserted against estate property. It is therefore a "core" matter, 28 U.S.C. §§ 157(b)(2)(B), (K), over which the Court has constitutional authority to enter a final judgment regardless of the parties' consent. Res. Funding, Inc. v. Pac. Cont'l Bank (In re Wash. Coast I, L.L.C.), 485 B.R. 393, 405 (9th Cir. BAP 2012) (bankruptcy court has constitutional authority over lien/claim matters affecting creditors' distributions from estate property); Alaska Fur Gallery v. First Nat'l Bank (In re Alaska Fur Gallery, Inc.), 457 B.R. 764, 765-**7**66 (Bankr. D. Alaska 2011) (same as to adjudicating scope of lien claimed against estate property).

(continued...)

consistent herewith. This Opinion constitutes the Court's findings of fact and conclusions of law under FRBP 7052. They will not be separately stated.

FRANK R. ALLEY, III
Bankruptcy Judge

---

[13](...continued)
Even were consent required, Plaintiff in her Complaint expressly agreed to this Court's entry of a final judgment. Defendant to date has not expressly taken a position on the subject. By virtue of LBR 7012-1, he has thus waived any objection to the Court's authority to enter final judgment. See also Wellness Int'l Network, Ltd. v. Sharif, __ U.S. __, 135 S. Ct. 1932, 1948 (2015) (even assuming a lack of constitutional authority, a party may impliedly consent to final adjudication by the bankruptcy court).

MEMORANDUM OPINION-11